NOEL CORDERO CRESPO, Appellant, *v.* THE REGISTRAR OF PROPERTY OF ARECIBO, Respondent.

No. G-62-3. Decided June 27, 1963.

*Efraín Ramírez Ramírez* for appellant. The registrar appeared by brief.

Division composed of Mr. Justice Belaval, as Chief Judge of Division, Mr. Justice Hernández Matos, and Mr. Justice Santana Becerra.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On May 9, 1961, Rosa Crespo Hernández, married to Pedro Cordero Jiménez who at the time of adjudication was insane, executed a deed of satisfaction in favor of her son, Noel Cordero Crespo, petitioner herein, setting forth among the recitals in the deed that she and her husband, Pedro Cordero Jiménez, had acquired many years ago a two-story house past Calle Nueva in the ward of San Felipe of Arecibo, and that since her husband became incapacitated they were not able to make the necessary repairs and the house was in ruins, it being necessary for the other appearing party, her son Noel Cordero Crespo, to reconstruct the house, destroying practically the entire old structure and reconstructing it at a cost of $9,000; that it having been impossible for the executing party to pay for such investment, by deed of satisfaction No. 43 executed on May 9, 1961, before Notary Efraín Ramírez Ramírez, Rosa Crespo Hernández assigned in satisfaction all her rights and actions in the lot and reconstructed house to Noel Cordero Crespo for the sum of $4,500.

The deed having been presented for registration, the Registrar of Property of Arecibo refused to record on the ground that, since the property was community property, her husband, Pedro Cordero Jiménez, had not given his consent for the giving in payment. The Registrar relied on the prohibition of § 91 of the Civil Code of Puerto Rico (1930) which provides: "Nevertheless the real property belonging to the conjugal community may not be alienated or burdened, such a transaction being null, except when effected with the mutual consent of both parties to the marriage."

Subsequently Cricelia Cordero Crespo, a daughter of Rosa Crespo Hernández and Pedro Cordero Jiménez, resorted to the Superior Court of Puerto Rico, Arecibo Part, alleging that her father, Pedro Cordero Jiménez, was suffering from insanity, her mother Rosa Crespo Hernández from a chronic disease which prevented her from leaving the house to do any business; and that since her brother Noel Cordero Crespo was the creditor of his parents for the reconstruction of a house belonging to the conjugal partnership, the said Pedro Cordero Jiménez had no one to represent him, and that since there was no close relative of the family, the declaration of incapacity and the tutorship corresponded to one of the intestate heirs, as happened to be petitioner Cricelia Cordero Crespo, according to § 181 of the Civil Code of Puerto Rico (1930).

The corresponding hearing having been held with the appearance of the district attorney, the trial court gave credit to all of the foregoing allegations on the basis of the testimony of a medical expert on the physical condition of Pedro Cordero Jiménez and the testimony of other witnesses, and since the district attorney's report was favorable, it adjudged Pedro Cordero Jiménez incapacitated to administer his property and appointed Cricelia Cordero Crespo, petitioner herein, his legal tutrix, authorizing her also to assign and convey to Noel Cordero Crespo in satisfaction of debt the share of Pedro Cordero Jiménez in the above-described property.

By virtue of such authorization, Cricelia Cordero Crespo, executed in her father's name deed No. 88 of September 11, 1961, before Notary Efraín Ramírez Ramírez, in favor of Noel Cordero Crespo, assigning to him in payment for the reconstruction of the house in question all the rights and actions which Pedro Cordero Crespo could have for the sum of $4,500.

Both deeds having been presented in the Registry together with a certified copy of the aforesaid order of the Superior

Court of August 14, 1961, the Registrar refused to record the same in favor of Noel Cordero Crespo on the following grounds: (1) "because the act performed by the assignor, Rosa Crespo Hernández, constitutes an alienation of her rights and actions in this property without the consent of her husband, Pedro Cordero Jiménez, as required by law in order to execute a contract, since such property is community property"; (2) "because the alienation made by the tutrix by means of said deed No. 88 of assignment of rights and actions which may belong in the property to the incapacitated person, Pedro Cordero Jiménez, is void, since the tutorship of the incapacitated person is exercised by his daughter, Cricelia Cordero Crespo, when by law it must be exercised by the former's wife"; (3) "because the tutorship is not registered in the corresponding book as required by law"; (4) "because the afore-mentioned order is not sufficiently explicit, in our opinion, to authorize the transfer in the name of the incapacitated spouse of his community rights in this property, since such order fails to state how, when, or in what manner, or under what authorization was the sum of $9,000 invested and charged to the spouses"; (5) "because the order was entered without jurisdiction, since from the face thereof it does not appear that the incapacitated person was given notice of the action of incapacity brought against him, nor was he given an opportunity to defend himself, wherefore he could not validly be subjected to tutorship"; (6) "because the value of the construction was not appraised by experts or in any other legal manner, nor was it established whether the alleged investment was actually made in such reconstruction exclusively"; (7) "because in view of these facts and other circumstances appearing from the face of the documents it is clear, in our opinion, that the deed of satisfaction executed by the tutrix is null and, hence, void in law for the purpose of validating deed

No. 43 object of this matter, nor does the latter validate the former."

■ Of these objections only those enumerated under sub-divisions 1, 2, and 5 come within the competency of respondent Registrar; the others form part of a judicial declaration or are covered by the presumption of regularity of the proceedings.

■■ It is correct that the concurrence of both spouses is necessary in order to alienate real property belonging to the community partnership, and according to § 91 related to § 1313 of the Civil Code of Puerto Rico (1930)—31 L.P.R.A. §§ 284 and 3672—any alienation of real property without the express consent of both spouses is void. However, this provision refers to a normal case in which both parties have the legal capacity necessary to alienate community property. Moreover, since the law has limited the declaration of nullity in favor of the spouse or his heirs, the individual alienation may be ratified by the other party, in which case what has been declared void becomes merely voidable. According to the mortgage commentators, that which can be ratified is recordable.

"On the other hand, we cannot depend too much on what the Civil Code considers void, because the Registrar is not always the one bound to pass on the nullity, nor is the situation always very clear. The lack of the consent of the husband in the acts executed by a married woman renders such acts void, according to the Code. However, only the husband or his heirs may allege the nullity, wherefore the Directorate, in view of the hesitant case law, held on August 22, 1894, that such lack is no bar to registration. Donations in which the donee's acceptance is lacking are void; yet, they can be suspended only until such fact is established. The illegal donation is void as well as that of all the property, but the Registrar is bound to record because it is considered valid

until a judicial order is entered at the instance of the only interested parties, pursuant to §§ 654 and 655 of the Code in relation to §§ 634 and 636, according to the Order of August 21, 1893. In the case of § 1057 of the same Code, the creditors should be summoned for the purpose of setting up the inventory, but even if they are not summoned, the act is valid if they give their consent subsequent thereto, wherefore the defect should be deemed curable.

"The opinion of every Registrar also has great influence in appreciating the defects, from the Registrar who only sees defects in everything and denies the registration without good reason for fear of incurring responsibility to the one who does not see the defects and does not attach the importance which they deserve. On the other hand, the question is difficult: there are diverse degrees in the defects; it is not easy to draw a clear dividing line between the incurable defects, the curable, and those which do not bar registration, and in appreciating them the Registrar may follow different courses or part from different principles which, naturally, do not always lead to the same end.

"The lack of marital consent referred to above should serve as an example. The wife sells without her husband's consent, the act is void according to the Code, and the General Directorate begins by holding that the defect is incurable because capacity is lacking. It is afterwards noted that the husband may ratify the act and, hence, that the defect may be easily cured. And later on, in the belief that the contract is not necessarily void and that only the husband or his heirs may challenge the contract, it is decided that registration is in order." 3 Morell, *Legislación Hipotecaria* 255–56.

■ In the case under consideration the alienation can be ratified, and after the capacity of an unsound husband is supplied, his tutrix is the one bound to ratify the act.

■ The Registrar is right in holding that when the husband becomes incapacitated, his wife must assume the tutorship. Scaevola explains that the reason for this preference lies in the complexity of interests resulting from the community partnership.

"On the other hand, it should be borne in mind that there is also a powerful reason for holding that the capacitated spouse, man or woman, of full age or under age, is bound to represent the incapacitated spouse. The reason is that the indivision of community property subsists because insanity cannot be considered a good ground for seeking the division of the property of the spouses, a measure which is so important that it may be adopted only whenever the spouse of the petitioner shall have been condemned to a penalty which includes civil interdiction, or should have been declared an absentee, or should have given cause for divorce (§ 1.433). In the case of insanity supervening after the marriage, the marriage subsists and the property preserves the status of community property. Since the property remains undivided, the capacitated spouse is bound by law to administer the same; and since the administration of the property and the personal care are so interrelated insofar as the tutorship is concerned, it is evident that the person providing the care of the incapacitated person should likewise be the administrator of his patrimony. From any aspect from which the point under discussion may be viewed, the conclusion is reached that the mere status of spouse is sufficient in itself to acquire ipso facto the tutorship of the other spouse incapacitated by reason of insanity." 4 Scaevola, *Código Civil* 394–95 (Reus ed. 1942).

However, in the present case there is evidence that the capacitated spouse could not assume the tutorship for health reasons, and that reason ought to be sufficient for the Registrar since the substitution is a matter subject to judicial adjudication. The most modern commentators are precisely

beginning to emphasize the convenience of placing more emphasis on the tutor's ability than on the established order. IV Borrell y Soler, *Derecho Civil Español* 239 (Bosch ed. 1954) ; II-II Puig Peña, *Tratado de Derecho Civil Español* 332 (ed. by *Revista de Derecho Privado*).

 Although it is true that it is necessary to notify the incapacitated person of the action of incapacity brought against him—a requirement which arises out of the authorizations relative to minors of the former Family Council, at present displaced by a complete judicial intervention in everything relating to incapacity—since the district attorney of the Superior Court of Puerto Rico, Arecibo Part, appeared at the hearing of the petition of insanity of the person in this case, and medical testimony having been offered on the physical cause of the incapacity, the presence of the insane person at the hearing would not have added any additional guarantee to the authorization proceeding, in view of the special circumstances of this case in which all the parties presumably aggrieved have knowledge of the authorization sought. At any rate, it is incumbent on the judge, in view of the variety of the juridical situations of the tutorship, to determine in which cases the incapacitated person must be summoned. The judicial discernment on this matter ought to be sufficient for the Registrar of Property.

██ Perhaps it might be well to clarify that the authorizations to alienate property of an incapacitated spouse are different from the authorizations to alienate property of minors. *Roselló* v. *Registrar*, 42 P.R.R. 491, 493–94 (Aldrey) (1931).

The decision denying registration will be set aside and the registrations sought ordered.